No. 29—John B. Ghent and others, plaintiffs in error *vs.* Patrick Adams, defendant in error.

[1.] Public agents, contracting in behalf of the public, are *not*, individually, liable for the payment of such contracts; as where a note was given by four individuals, who were acting as Justices of the Inferior Court, for the County of Heard, for the erection of a court-house, for the benefit of the County, under the authority of a public statute.

[2.] Where such justices sign the note, with the addition of the initials J. I. C. to their names, parol evidence is admissible, for the purpose of shawing, (when there is any doubt,) whether the contract was in fact made in their individual or their official character, as agents of the public.

In Equity. From Heard Superior Court. Tried before Judge Hill. October Term, 1846.

For the facts of the case, and errors alleged, see the opinion of the Supreme Court.

Dougherty, for the plaintiffs in error.

Haralson, for the defendant in error.

*By the Court*—Warner, J. delivering the opinion.

The record in this case discloses the following facts. The plaintiffs in error executed two promissory notes, payable to the defendant in error, copies of which are as follows:

" One day after date we promise to pay Patrick Adams, or bearer, the sum of nine hundred and thirty-three dollars and seventy-five cents, value received, this 1st day of January, 1843.

Signed,         J. B. Ghent,        J. I. C.
                B. D. Johnson,      J. I. C.
                Thomas Hilby,       J. I. C.
                M. D. Robinson,     J. I. C."

" By the first of January, eighteen hundred and forty-four, we promise to pay Patrick Adams, or bearer, nine hundred and thirty-three 75-100 dollars, value received, May 8th, 1843.

Signed,         J. B. Ghent,        J. I. C.
                B. D. Johnson,      J. I. C.
                Thomas Hilby,       J. I. C.
                M. D. Robinson,     J. I. C."

Ghent *vs.* Adams.

It also appears that Adams, who was the plaintiff below, instituted suit on these notes, in the Superior Court of Heard County, against the defendants in their *individual* capacity, and not as Justices of the Inferior Court of said County; to which action the defendants plead, they were not *personally* responsible, but made the contract with the plaintiff in their *official* capacity, as justices aforesaid, for building a court-house in said County; which plea, on the first trial, was overruled, and a verdict rendered against them, whereupon they entered an appeal. During the pendency of said suit on the appeal, the defendants, in the Court below, filed their bill on the chancery side of the Court, and alleged that, in the year 1841, they did, as Justices of the Inferior Court of the County of Heard, contract with the said Adams to build and erect a court-house in the town of Franklin, in said county. That, in making the contract for the erection of said court-house with the defendant in the bill, the complainants expressly charge, they did so as the agents of the County of Heard, and as such agents only. And that, in all and every subsequent negotiation in relation thereto, they acted as such, and it was so understood and intended by both the contracting parties; that the said notes were only to be an evidence of the amount due the defendant by the said County of Heard, for building said court-house; a mere liquidation of his claim for the amount due him by said county, and in no wise, or in any event, obligatory or binding on the complainants individually, as they are now charged; that said notes were made by complainants, and received by the defendant, with that understanding, not implied, but *expressed at the time*, and so both parties intended it should be reduced to writing, and was so understood by them at the time said notes were executed; and they supposed said notes, as executed, contained their said distinct and definite understanding, never thinking or intending that the complainants should be charged individually with the payment thereof.

The bill prays that the defendant may be perpetually enjoined from prosecuting said suit against them individually, and that said contract may be reformed and executed, according to the original intention and understanding of the parties thereto.

To this bill the defendant in the Court below filed a general demurrer for want of equity, and that the complainants had an ample adequate remedy at common law; which demurrer was sustained by the Court below, and the bill ordered to be dismissed. To

Ghent *vs.* Adams.

which decision the counsel for the complainants excepted, and now assigns the same for error in this Court.

This controversy is pending between the *original* contracting parties; the rights of third persons do not intervene who are strangers to the contract.

[1.] There is a manifest distinction between contracts made with *private* agents, and agents acting in behalf of the *public*, as it regards their *personal* responsibility. The reason of the distinction is, that it is not to be presumed either that the public agent means to bind himself personally, in acting as a functionary of the public, or that the party dealing with him, in his public character, means to rely on his *individual* responsibility. If individuals, acting for the public, are to be held *individually* liable upon their *official* contracts, but few would be willing to accept of any public trust or office. *Story on Agency*, 382, 383, secs. 302, 303; 2 *Kent's Com.* 632; 2 *Livermore on Agency*, 269.

The State of Georgia is divided into counties for the more convenient administration of her laws, and for other purposes. Courts are required to be held in each county at stated periods, for the welfare and accommodation of her citizens. Court-houses are required to be built in each county by the Justices of the Inferior Courts thereof, in which the public justice may be administered. *Prince*, 169. The court-houses in the respective counties, are not only built for the transaction of the public business of such portion of the people as reside within their respective limits, but such other citizens of the State who may have business there. It is a *public* building, erected for the use of the public, in which the officers of the government are required to perform their appropriate duties for the benefit of the public; and the public funds of the respective counties may be appropriated for building and repairing court-houses. *Prince* 170. Moreover the Justices of the Inferior Courts may levy and collect taxes for that purpose from the citizens of the respective counties. *Prince* 171. Court-houses in this State are to be built by the *public*, for the benefit of the *public*, and to be paid for by the *public* in the manner pointed out by law.

Justices of the Inferior Courts are *public officers*, known to the Constitution and laws of the State. Their *official* duties are likewise pointed out by law: one of which is by the Act of 21st February, 1796, "to cause to be erected and kept in good repair (or where the same shall be already built,) maintain, and keep in *good*

Ghent *vs.* Adams.

repair at the charge of the county, one good and convenient court-house of stone, brick, or timber." *Prince,* 169.

The allegations in the complainant's bill show, that the contract was made with the defendant by the complainants, for building a court-house in the County of Heard, and that they contracted with him as the *agents of the County of Heard,* and executed to him their notes in that capacity, and it was expressly so understood by both contracting parties at the time, that the County of Heard was to be bound for the payment thereof, and not the complainants individually.

The complainants however insist that they are entitled to have the mistake corrected, and the contract reformed on the principles recognised by this Court in *Rogers* vs. *Atkinson et al.* 1 *Kelly's R.* 12; and *Collier* vs. *Lanier, Ib.* 239.

We do not question the principles settled by the Court in *Rogers* vs. *Atkinson, and Collier* vs. *Lanier,* whenever a proper case shall be made for their application: but in order to apply the principles settled by the Court in those cases, the complainant should state clearly and distinctly what the contract was between the parties, and what *particular portion of it* was omitted or inserted, either by fraud or mistake, that issue may be joined thereon and the proofs confined thereto at the trial.

We place our decision in this case on the ground, that the [2.] complainants made the contract, for which the notes were given, as *public* agents for the County of Heard, for the erection of a public building, and that the defendant contracted with them in that capacity, and not in their *individual* capacity: consequently, they are not bound in their individual capacity for the payment of the notes, either in law or equity, and they have as perfect, ample and adequate remedy in a court of Law to make their defence, as they have in a court of Equity, according to the case made by their bill. The laws of Georgia as we have seen, make them *public agents* for the county, to erect and keep in good repair a court-house, and admitting there was doubt arising from the face of the notes as to the character in which they were given, it would be as competent for the complainants to plead and prove that fact in a court of Law as in a court of Equity, at least no impediment, or barrier is suggested on the record. The inquiry in all contracts made by public agents is, *to whom was the credit, in contemplation of the parties, intended to be given.* 2 *Kent's Com.* 633.

Where a check was drawn by a person who was cashier of a

Bank, and it appeared doubtful, on the face of the instrument, whether it was an *official* or *private* act, parol evidence was admitted to show that it was an *official* act. *Mechanics' Bank* vs. *Bank Columbia*, 5 *Wheaton's R.* 326; *Lazarus* vs. *Shearer*, 2 *Ala. R. N. Series*, 718; *The Merchants' Bank of Macon* vs. *The Central Bank of Georgia*, 1 *Kelly's R.* 429. In McBeth *vs*. Haldimand, 1 *T. R.* 182, Buller, Judge, says: "In any case where a man acts as *agent of the public*, and treats in that capacity, there is no pretence to say that he is *personally* liable."

In Brown *vs*. Austin, 1 *Mass. R.* 214, Thatcher, Judge, remarks: "It appears, by the record, that the plaintiff in error was acting as the agent of the public. The law is settled, that any person acting in that capacity, who makes contracts for the public, contracts in which he has no interest or concern other than as one of the individuals composing the body politic, does not render himself personally liable." In Fox *vs*. Drake, 8 *Cowen's R.* 191, the note declared on was in the following words:

"On settlement with Sylvanus Fox, for work and labour on the court-house in the village of Owego, we find there to be due him two hundred and eighteen dollars and sixty-five cents, which we promise to pay on the first day of June next. March 25th, 1823.

    Signed,           JOHN R. DRAKE,

                    CHARLES PUMPELLY,

   *Commissioners for building the court-house at Owego Village.*"

It was contended in this case that the defendants were *personally* liable; that the addition to their names was a mere description of person. The defendants were commissioners for building a court-house in Owego village, under a public statute of the State of New York. The court held, the defendants were not *personally* responsible, unless it was clearly their intention to assume personal responsibility, which did not appear. *Belknap* vs. *Rhinhart*, 2 *Wend. R.* 375; *Hodgson* vs. *Dexter*, 1 *Cranch R.* 345.

We have already said that Justices of the Inferior Court are public officers known to the constitution and laws of the State of Georgia. Their official signatures to deeds, and other instruments, are recognised every day by the initials "J. I. C." In this State the letters "J. I. C." attached to the name of an individual have an *official technical* signification; and when attached to the names of those who are acting as Justices of the Inferior Court, under the authority of a public statute, as the public agents, whose duty it is to make contracts for the erection of court-houses and jails, in their

respective counties, for the use and benefit of the public, the presumption is very strong, when their names so appear on the face of a contract, that they intended to bind the county, and not themselves individually. Admitting, however, that a contract so signed by them is *prima facie* evidence of their personal liability, and that the initials " J. I. C." are not to be considered as indicating their official character, yet, in our judgment, such *prima facie* evidence may be rebutted, and the true character of the transaction shown, as was done in the case of the Mechanics' Bank *vs.* The Bank of Columbia. In that case the check declared on was as follows:

" No. 18. $10,000. Mechanics' Bank of Alexandria, June 25th, 1817. Cashier of the Bank of Columbia, pay to the order of P. H. Minor, Esq. ten thousand dollars.

WM. PATON, JR."

Mr. Justice Johnson, in delivering the opinion of the court, said: " The only ground on which it can be contended that the check was a private check is, that it had not below the name the letters *Cas.* or *Ca.* But the fallacy of the proposition will at once appear, from the consideration that the consequence would be that all Paton's checks must have been adjudged private. For no definite meaning could be attached to the addition of those letters without the aid of parol testimony.

By the aid of the parol testimony in that case, the court held, the check to have been drawn by Paton in his *official* capacity as Cashier of the Mechanics' Bank of Alexandria.

Believing, as we do, that the complainants are not *individually* liable for the payment of the notes, on the statement of facts presented to us by the record, and that they had an ample and adequate remedy to protect themselves from such liability in the common law court, without the assistance of a court of equity, we affirm the decision of the Court below, dismissing the bill on that ground.