THE MAYOR, ETC., OF AMERICUS *vs.* ELDRIDGE.

1. When a municipal corporation is vested with power to open streets, to construct sidewalks, to levy taxes, etc., it necessarily implies the right to insert a sewer in the sidewalk to carry off the surface water, instead of an open ditch.
2. An adjacent property owner is not entitled to an injunction upon the ground that the sewer which, in the discretion of the municipal authorities, is about to be inserted, may be too small for the volume of water which, at times, will necessarily pass through it, thus flooding his lot, causing sickness, and otherwise damaging him.

Injunction. Municipal corporations. Streets. Before Judge CRISP. Sumter County. At Chambers. February 17, 1880.

Reported in the opinion.

HAWKINS & HAWKINS, for plaintiff in error.

N. A. SMITH, for defendant.

CRAWFORD, Justice.

The controversy in this suit arose out of the size and location of a sewer by the plaintiff in error, at the intersection of Taylor with Lee street, and which was immediately in front of the residence of the defendant in error, who was complainant in the court below. His allegations were, that the diameter of the sewer was only two feet, whilst it should be three to carry off the water in the heaviest rains. That this want of size will, at such times, cause the water to run over the sidewalk into the yard, cellar, and back-lot, and that this flooding of his premises, especially under his house, would be very likely to produce sickness, besides otherwise damaging his lot by washing off the soil. That when he improved his lot, he, by the consent of the then city council, turned the water slightly, and carried it into a ditch, in which it has passed ever since. That the cost to the city would only be the difference between a two and a three foot sewer for the distance of some ten or twelve feet. Upon these allegations he prayed an injunction against the city council to restrain it from putting in this sewer across and underneath the sidewalk.

In obedience to an order *nisi* the defendant appeared, and as its showing against the granting of the injunction, filed objections in the nature of a demurrer, which were :

1. That the city had power under its charter to open streets, construct sidewalks and sewers.

2. That the city council was not liable to an action for failing to provide sewerage, nor for the deflection or the size thereof.

3. That there was no equity in the bill.

The chancellor, declining to pass upon the bill and the objections alone, heard the answer and the affidavits, and thereupon granted the injunction, to which the defendant excepted.

There are but two questions involved in this case. The first is, whether the city council under the power "to open and lay out streets for the good of the city, to direct and have sidewalks kept in order, and to levy a street tax" for working the same, is authorized to put in a sewer to conduct the surface water along its streets instead of allowing it to pass in an open ditch.

The second, whether or not an injunction will lie by an adjacent property owner to restrain the city authorities from exercising such control over the public streets and sidewalks as in their judgment will make them most suitable for the public safety and convenience.

1. Whenever there is a power granted to a municipal corporation to do certain specified things, such as opening and laying out streets, constructing sidewalks, coupled with authority to levy taxes for repairs to the same, it necessarily implies the right to do all things which may be required for a proper execution of the power.

The complainant built his house at a low point fronting Taylor street; there is a sharp and steep declivity on this street facing his house, down which the water runs, and is carried away by means of an open ditch, and the city proposes to convey that water through a sewer inserted therein upon the sidewalk, and in no wise encroaching upon the lot of complainant. The power to repair the streets and direct the keeping of the sidewalks, implies the power to provide for the flowing of the water in such way as to do the least damage, and to give safe transit over them to the public.

We think that this principle has been too long settled to need further comment here. 1 Dillon Mun. Cor., §58 ; 20 Howard, 147.

2. The second question as to the right of the adjacent property owners to ask an injunction to restrain the exercise of such a power, as well as the right to an action at law for damages, have been frequently before the courts. It will be found upon examination that in the matter of overflow-

ing the lands of another, there is a recognized difference between natural streams, passing within well defined and actual banks, and surface water caused by rain or melting snow. The obligation to keep the streets in repair involves the right to make changes in the surface of the ground, and although such changes affect the adjacent owners injuriously, where the power is not exceeded there is no liability. Neither is the municipality bound to protect one from the surface water who owns land below the level of the street.

A municipal corporation is not liable to an action for consequential damages to private property or persons when the act done is pursuant to a power conferred, and whether wise or unwise cannot be judicially revised or corrected. 1 Dillon Mun. Cor., §59 ; 2 *Ib.*, §781, 798, 799.

We are unable to recognize any difference in principle between damages sustained whilst exercising a clear legal right, by reason of cutting away the earth and leaving the property of an owner inaccessible from its elevation, and the case under consideration ; each bought and improved with the knowledge that the right existed in the city over the streets to work, to raise, to grade, to drain, and unless that legal right was exceeded, it would be but a case of *damnum absque injuria*. The case of a private or a public nuisance is not to be confounded with those enumerated.

To suspend by injunction the *legally authorized acts* of a municipal corporation upon its public streets, for the safe condition of which it is responsible, by adjacent owners upon an apprehension of future injuries, would be to allow the judgment of these private owners to arrest and set aside *that of the constituted authorities* charged and entrusted with the performance of these especial duties. To authorize such interference the acts complained of must be *ultra vires*.      1 Denio, 595 ; 20 Howard, 135 ; 8 Allen, 129 ; 13 Gray, 601 ; 43 *Ga.*, 67 ; 34 *Ib.*, 326 ; 28 *Ib.*, 46 ; 23 *Ib.*, 402.

It follows, therefore, that the injunction was improperly granted, and the judgment must be reversed.